# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIM. NO. 16-110 (RMB)** |
| | : | |
| **v.** | : | **MOTION FOR** |
| | : | **REDUCTION IN** |
| | : | **SENTENCE** |
| **MICHAEL FANELLI** | : | |

---

### I.      Introduction

Michael Fanelli, by counsel, moves the Court for a reduction in sentence under

18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. §1B1.13(b)(1)(C), (b)(3)(D), and (d). He is

currently scheduled for release on March 12, 2027. Mr. Fanelli has been in custody for 70

months, nearly six years, for sentences imposed in the Eastern District of Pennsylvania

and on this docket. He has served 70 percent of this 120-month sentence, for which he

must serve 102 months or 85 percent.[1] Mr. Fanelli is now 45 years old.

Mr. Fanelli has spent the past 45 months of his time in custody suffering from

urinary and prostate problems, which continue to cause unrelenting pain and

discomfort with no relief in sight. His prostate issues are documented in his medical

---

[1] Mr. Fanelli received a sentence of 72 months in the Eastern District of Pennsylvania for robbing a bank, Criminal Number 18-543, DE # 35 (E.D.Pa. Aug. 28, 2019). As a result of this offense, Mr. Fanelli also violated the terms of his supervision, which this Court had imposed in addition to a 37-month sentence of imprisonment for committing six bank robberies. DE # 29 (March 2, 2017). This Court imposed a consecutive 48-month sentence for the violation. *See* DE # 45 (Jan. 15, 2020). The Bureau of Prisons aggregates these sentences for administrative purposes and so Mr. Fanelli is currently serving a 120-month sentence. *See* 18 U.S.C. § 3584(c).

records as early as September 4, 2020. (A1-2).[2] He has been diagnosed with benign prostate hyperplasia (BPH) as of June 2, 2021, (A8), presumptive prostatitis as of July 9, 2021, (A13), and male pelvic pain syndrome as of November 14, 2022, (A90). For years, he has consistently reported burning pain, pain while urinating and sitting, and pain levels of 10/10 that interfere with sleep and work. (A1, 20, 22, 55, 65, 67, 76, 82, 83). Imaging also identified multiple renal lesions that were recommended to be monitored by MRI every six months, but the BOP stopped complying with that recommendation and substituted an ultrasound order several years ago. (A62, 75). Mr. Fanelli also has not seen a urologist in several years, it appears because of a misreading of a handwritten physician's note. (*Compare* A67, *with* A82). Recently, after more than a year at FCI Fairton, he was again referred for a urology consult but that appointment date has come and gone. (A90). Instead, what the BOP has offered Mr. Fanelli is years of medication trials (two alpha blockers, three different rounds of antibiotics, and high dosages of pain medication), none of which have relieved him.

This failure to provide appropriate specialized care for Mr. Fanelli's prostate, urethra, and kidneys, and the risk of deterioration of the basic functioning of major organs is an extraordinary and compelling ground for reduction in sentence. *See* U.S.S.G. § 1B1.13(1)(C) ("The defendant is suffering from a medical condition that

---

[2] "A" references a separately submitted appendix that contains excerpted health and other BOP records for Mr. Fanelli, as well as certifications relating to the health conditions of his family members. Counsel has several hundred pages of BOP medical records from 2020 to the present which are repetitive and cover health concerns not applicable here. Counsel will forward the lengthy documents to the government and make them available to the Court.

requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."). If released, Mr. Fanelli would immediately seek a urological evaluation, attend regular and timely follow-up treatment, whether it be recommended surgery or other therapeutic modalities, and hope to regain uninhibited bodily function and pain-free activities of daily living.

Mr. Fanelli presents a second, critical ground for release, the need to care for his 43-year-old sister Tisha Fanelli, whose multiple sclerosis has rapidly advanced and left her unable to care for herself. Tisha cannot leave the confines of her tiny house without being physically carried, she requires frequent emergency help inside her home when she falls and cannot get up herself, and needs help with all other activities of daily living. However, Tisha cannot find any adequate caregiver. She needs 24-hour close assistance that her mother and aunt cannot provide, and that her state benefits have been unable to accommodate. This presents another extraordinary and compelling ground for relief. *See* U.S.S.G. § 1B1.13(b)(3)(D) ("The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving [a sibling], when the defendant would be the only available caregiver for such family member . . . .").

Moreover, Mr. Fanelli has been proactive in his rehabilitation, which also supports his release. *See* §1B1.13; 21 U.S.C. § 994(t) (stating that rehabilitation *alone* cannot be an extraordinary and compelling reason for release). Mr. Fanelli worked fulltime with UNICOR Industries for over two years, roughly 1,900 hours, during

3

which he served as a head orderly providing painting and industrial cleaning services. Mr. Fanelli has completed several hundreds of hours of prison programming, including training in masonry, and courses in financial literacy and business. Mr. Fanelli is currently enrolled in the second stage of the RDAP (BOP's Residential Drug Abuse Program), through which he also leads a weekly Gamblers Anonymous group session for other inmates. He also reports he was just awarded the Best Upbeat Ritual Award in RDAP for entertaining and motivating his peers in their treatment and recovery. Mr. Fanelli is committed to bettering himself and others, and this establishes a third extraordinary and compelling ground for relief, to be considered in conjunction with his medical needs and caregiving obligations. U.S.S.G. § 1B1.13(d).

## II.     The First Step Act permits sentence reduction for Mr. Fanelli because he has shown "extraordinary and compelling reasons," and the 3553(a) factors support his release from federal custody.

The First Step Act permits Mr. Fanelli to move this Court to reduce his sentence if he shows that (1) he has exhausted administrative avenues; (2) extraordinary and compelling reasons warrant relief; and (3) the 3553(a) factors also support the motion. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

## A.     Mr. Fanelli has satisfied the exhaustion requirement.

On February 2, 2024, Mr. Fanelli, through undersigned counsel, sent a letter to the Warden of FCI Fairton requesting a sentence reduction due to his prostate issues and need to be a caregiver for his disabled sister. (A93). On February 7, 2024, the BOP denied that application. (A97). Pursuant to 18 U.S.C. § 3582(c)(1)(A), he may now make an application before this Court.

**B.   Mr. Fanelli is eligible for a sentence reduction under § 3582(c)(1)(A): his case is "extraordinary and compelling" under U.S.S.G. §§ 1B1.13(b)(1)(B), (b)(3)(D), and (d).**

Section 3582(c)(1)(A)(i) directs courts to consider "applicable" Sentencing Commission policy statements when granting reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Pursuant to Congressional authorization, the Commission has promulgated a policy statement that governs defendant-filed motions under § 3582(c)(1)(A): U.S.S.G. §1B1.13. (eff. Nov. 1, 2023). The policy statement at §1B1.13 is mandatory authority governing motions under § 3582(c)(1)(A).

**1.   Mr. Fanelli's serious medical condition satisfy the Sentencing Commission's definition in U.S.S.G. § 1B1.13(b)(1)(C).**

Under the newly adopted U.S.S.G. § 1B1.13(b)(1)(C), "extraordinary and compelling reasons" exist if a defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C) (eff. Nov. 1, 2023).

While the failure of the BOP to provide specialized care is a new medical ground in the guidelines, even prior to the amendment, courts frequently cited this problem as a medical basis for granting sentence reduction motions. See U.S. Sent'g Comm'n, Compassionate Release Data Report, (Dec. 2022), tbls. 10, 12, & 14.[3] Indeed, in the District of New Jersey alone, several judges granted sentence reductions where the BOP

---

[3] *Available at* https://www.ussc.gov/research/data-reports/compassionate-release-data-reports.

failed to adequately or timely treat chronic illnesses and follow the recommendations of

specialists. *See, e.g.,*

- *United States v. Verasawmi*, Crim. No. 17-254, 2022 WL 2763518 (D.N.J. July 15, 2022) (FLW) (granting sentence reduction from FMC Carswell because the defendant was "suffering from other serious medical conditions for which she has received repeatedly delayed or otherwise inadequate treatment while in prison");

- *United States v. O'Neal*, Crim. No. 20-470 (D.N.J. Jan. 4, 2023) (JMV) (granting release because of concern that BOP delayed in diagnosis of prostate cancer which required aggressive and immediate treatment);

- *United States v. Russell*, Crim. No. 18-215 (D.N.J. March 9, 2022) (MAS) (finding defendant had received, at best, minimal medical care at FCI Forrest City and that it was insufficient that his charts only showed that his known serious chronic disorder was still being assessed for the appropriate referral to a specialist);

- *United States v. Moe*, Crim. No. 17-277, 571 F.Supp.3d 267 (D.N.J. Nov. 12, 2021) (KSH) (finding, among other factors, that the defendant's worsening chronic medical conditions and risk of insufficient medical treatment justified reduction three months into 24-month sentence).

Numerous courts in other Districts, in granting compassionate release, have

similarly faulted the BOP for its medical delays and failure to adequately treat serious

conditions. *See, e.g.,*

- *United States v. Robles*, Crim. No. 19-4122, 2022 WL 229362, at *2 (S.D. Cal. Jan. 26, 2022) (granting compassionate release from FMC Carswell where "[d]espite the occasional doctors' visits, which usually coincide with one of her strokes, it appears that Robles has not received the consistent care, monitoring, and treatment required for her conditions, including a much-needed heart surgery which has yet to even be scheduled");

- *United States v. Derentz*, Crim. No. 15-418, 2022 WL 2763518 (E.D. Pa. June 16, 2022) (BOP's failure to attend to eye conditions contributed to defendant becoming blind in his left eye);

- *United States v. Williams*, Crim. No. 99-00486, DE # 380, at 6 (E.D. Mo. Nov. 17, 2021) ("Williams's [spinal issues have] deteriorated significantly over the last several years, and he is now confined to a wheelchair. Furthermore, while he receives opiates for pain management, he has not received the ordered MRI to

monitor his condition, and it appears that there is no reasonable expectation that the BOP will provide him with recommended spinal surgery in the foreseeable future.");

- *United States v. Roman*, Crim. No. 14-43, 2021 WL 3173351, at *4 (S.D. Ohio July 26, 2021) (BOP's failure to schedule regular appointments for the treatment of the defendant's glaucoma resulted in blindness);

- *United States v. Almontes*, Crim. No. 05-58, 2020 WL 1812713 (D. Conn. Apr. 9, 2020) (BOP's indifference to defendant's deteriorating condition was an extraordinary and compelling reason);

- *United States v. Beck*, 425 F. Supp. 3d 573, 580-81, 588 (M.D.N.C. 2019) (noting BOP's treatment of Beck was "grossly inadequate" and "abysmal" and that "[a]bsent judicial oversight, she is unlikely to receive better treatment at FCI Aliceville going forward");

- *United States v. Ranes*, Crim. No. 06- 41, slip op. at 5 (D. Alaska Nov. 22, 2022) (granting release in part due to lack of necessary surgery and medical care for many intestinal issues);

- *United States v. Terrell Gaulden*, Crim. No. 99-01-1, 2022 WL 2820109, at *5 (S.D. Ga. July 19, 2022) (granting release due in part to prison's failure to treat defendant's serious medical condition of sarcoidosis);

- *United States v. Kohler*, Crim. No. 15-425, 2022 WL 780951, at *4 (M.D. Fla. Mar. 15, 2022) (granting release based on prison's failure to adequately treat defendant's heart condition and other serious medical issues);

- *United States v. Perez-Urena*, Crim. No. 05- 477, slip op. at 2–3, 24 (N.D. Ga. Oct. 26, 2021) (granting release to defendant in part due to fact that he was not receiving needed medical care for his diabetes and related medical conditions);

- *United States v. Munera-Cadavid,* Crim. No. 89- 294, slip op. at 3–5 (S.D. Fla. Aug. 8, 2021) (granting compassionate release due to high risk of aggressive skin cancer and failure to receive sufficient preventative care);

- *United States v. Morse*, No. 10-20361-CR, 2020 WL 6534899, at *3 (S.D. Fla. Nov. 3, 2020) (granting release of defendant in part due to the failure of prison to provide adequate medical care).

- *United States v. Crowell*, Crim. No. 16-107, 2020 WL 4734341, at *2 (D.R.I. Aug. 14, 2020)  (granting release based on defendant's pre-existing condition of lupus, which the BOP failed to recognize, and then defied the court's order to have the inmate examined and assessed for lupus by a rheumatologist);

- *United States v. Lindell*, 517 F. Supp. 3d 1141, 2021 WL 420059 (D. Haw. Feb. 5, 2021) (granting release for inadequate medical care where the inmate "bureaucratically scream[ed]" for help, and the records showed routine and

significant delays in diagnosing and medically treating his age-related macular degeneration, leading him to suffer "a large degree" of preventable vision loss).

In the few months since the new amendment relating to inadequate specialized care for medical problems became effective, courts have also granted relief for the BOP's failure to treat serious medical concerns. *See, e.g.,*

- *United States v. Aguilera*, Crim. No. 19-1955, 2024 WL 1774009 (S.D. Cal. April 23, 2024) (granting release under new guideline for failure to provide appropriate medical care recommended by community doctors to care for his prosthetic right eye and avoid further deterioration of glaucoma in his left eye);

- *United States v. Pepper*, Crim. No. 00-336 DE # 230 (M.D.Pa. Dec. 5, 2023) (recommended surgery for severe osteoporosis not scheduled for several years and incapacitation also inhibited inmate's ability to care for his diabetes);

- *United States v. Bell*, Crim. No. 19-66, DE # 390 (D. Alaska Dec. 26, 2023) (finding BOP's two-year delay from initial discovery of nodules of suspicious malignancy to inmate's biopsy and subsequent late-stage cancer diagnosis was "egregious[ ] and raised questions about the efficacy of BOP's medical intake procedures for individuals transferring between federal institutions).

Here, Mr. Fanelli's medical circumstances satisfy the Sentencing Commission's definition of "extraordinary and compelling" reasons. He has needed specialized care to treat his prostate issues for almost four years, there does not appear to be any medical reason that he stopped seeing a urologist or having recommended MRI examinations to evaluate the stability of renal lesions, there is no long-term plan, and none of the six medications he has been prescribed over three years have eased his symptoms.

Mr. Fanelli's records show he first reported urinary issues in September 2020:

> I/M reports that a couple months he began to have urinary hesitancy and a week stream. He states that it has gotten worse in the last 30-45 days. Denies dysuria. He is vague about frequency and urgency. States once 3 weeks ago he had hematuria and a strong odor to urine . Reports Incomplete emptying and that sometimes he tries to void for 10 min and has minimal output. no fever or chills.

(A1 (Sept. 4, 2020)). By July 2021, Mr. Fanelli was one month into his first round of

alpha-blockers (medication that relaxes the muscles around the prostate) but still

reported a 10/10 on the pain scale, and difficulty working and sleeping.

> Chief Complaint:   Urinary Problem
> Subjective:   42 yo male presents with c/o of 6 weeks of discomfort to include typical BPH symptoms and
> dysuria which he describes as burning.   Reports burning has grown worse over the last few
> days and is now at 10/10 pain.   Was started on Doxazosin four weeks ago.   Exam at time of
> last visit included enlarged and tender prostate on DRE.   Reports that pain interferes with
> sleep and concentration while at work.

(A10). On August 9, 2021, he lost consciousness as he walked to sick call and was taken

to the emergency room. There, he reported that, among other problems, he had not

urinated in two days:

> Emergency Room                 08/09/2021   08/09/2021            Emergent        No
> Subtype:
>    Williamsport Hospital EMR
> Reason for Request:
>    Witnessed fall.
> Provisional Diagnosis:
>    I/M states that he was coming to sick call and doesn't remember what happened. Had a witnessed fall.
>    Other I/Ms stated that he just fell over while walking. Found laying in grass face up by HS. Last night had
>    diarrhea and was on toilet for hours. Was dizzy in cell. Has not urinated since early Saturday morning.
>    Followed by urology for chronic pain at shaft of penis. Last seen by urology 8/6/2021. Reports numbness in
>    left leg, cervical neck pain

(A22). He began to see an in-house urologist, and imaging and exams were ordered.

(A18-19, 24-25). The exams found small renal lesions, including at the right hepatic

dome, (A30), with the recommendation that an MRI with contrast be done every six

months to "assure stability," (*see, e.g.*, A44, A60). He continued to report 10/10 pain:

> Chief Complaint:   Pain
> Subjective:   42-year-old presents on sick call with complaint of 10 out of 10 pain at RIGHT flank.   reports
> history of kidney stones.   Also has had an incidental finding of a 1.5 cm RIGHT renal cyst
> which is being followed for stability.

(A55 (sick call note of May 23, 2022)). And yet, on August 31, 2022, the follow-up MRI

recommended by the radiologist was simply changed to an ultrasound:

**Administrative Notes:**
  ADMINISTRATIVE NOTE   1          Provider:  Cullen, Thomas (MAT) D.O.
    Change MRI to US.

(A62). When Mr. Fanelli transferred from FCI Allenwood to FCI Fairton, and medical

staff attempted to schedule an MRI, the BOP denied it, but approved a CT of the

abdomen and pelvis:

  ADMINISTRATIVE NOTE   1          Provider:  Hansen, Camilla ARNP
      MRI denied but will approve CT abdomen & pelvis, will update orders.

(A75 (May 17, 2023)).

The BOP's response to Mr. Fanelli's consistent reports of pain has been

insufficient. BOP has simply provided medications, none of which have relieved the

symptoms.

| Name of medication | Dose(s) | Date(s) prescribed | Reason for medication | Appendix Cite |
|---|---|---|---|---|
| Sulfamethoxazole/ Trimeth DC 800 | 160mg 2/day for 14 days<br><br>160 mg 2/day for 60 days | 7/9/21 (dx)<br><br><br>11/14/22 | Antibiotic to treat urinary tract infection | (A11)<br><br><br>(A68) |
| Ibuprofen | 600 mg 3/day | 8/6/21<br>11/16/21 | NSAID to treat prostate pain | (A20) |
| Ciprofloxacin | 500mg 2/day for 28 days | 7/9/21 | Antibiotic for prostate inflammation | (A11) |
| Flomax/Tamsulosin | .4mg<br><br>.8 mg | 1/10/22<br><br>5/6/22<br><br>11/8/22 | Alpha-blocker to treat disorder of prostate | (A35)<br><br>(A54)<br><br>(A69) |

| Amitriptyline | 25mg | 5/6/22 | To treat prostate pain | (A54) (A69) (A71) |
|---|---|---|---|---|
| | | 11/8/22 | | |
| | | 1/31/23 | (dx at Mr. Fanelli's request) | |
| Doxazosin | 2mg | 6/2/21 | Alpha-blocker to treat disorder of prostate | (A8) |
| | 4mg | 7/9/21 | | (A11) |
| | 4mg | 6/14/23 | | (A79) |
| | 8mg | 10/2/23 | | (A89) |
| | | 3/13/24 | | |

Mr. Fanelli has consistently reported prostate and urinary pain with no relief from medication, at both sick call and regular medical appointments. (A65 (Oct. 24, 2022)); (A67 (Nov. 12, 2022)); (A76 (June 14, 2023)); A82 (Oct. 2, 2023); (A83 (Jan. 19, 2024)).[4] A June 2023 urinalysis also found "many calcium oxalate crystals" in Mr. Fanelli's urine. (A77). He was also re-prescribed Doxazosin in June 2023, a medication that did not provide him relied in 2021. (A79).

Mr. Fanelli has neither seen a urologist nor been given a recommended MRI examination in almost two years. An October 2, 2023 BOP chart review indicates that at Mr. Fanelli's "last urology consult (11/14/22) [he] was given a probable diagnosis of

---

[4] Inexplicably, notes from a May 2023 medical encounter at FCI Fairton indicate Mr. Fanelli stated his prostate problem "is in remission," (A74 (May 17, 2023)). However, undersigned counsel has communicated with Mr. Fanelli about his prostate concerns since 2022 and he has never indicated any relief in symptoms. Indeed, at sick call one month after this alleged "in remission" statement, Mr. Fanelli reported the same urinary symptoms to a different provider. (A76 (June 14, 2023)).

male pelvic pain syndrome and urologic following was not necessary." (A82 (Oct. 2, 2023)). Counsel believes the BOP inaccurately transcribed the urologist's exam note from November 9, 2022: "No reason from urological standpoint not to transfer":



Generated 11/07/2022 08:44 by Klees, Halley LPN          Bureau of Prisons - ALM          Page 1 of 2

(A67). And while, in March 2024, the BOP again put in a consult for Mr. Fanelli to see a urologist, with a target appointment date of June 17, 2024, (A90), that appointment never happened.

Mr. Fanelli has been suffering from severe pelvic pain for at least *45 months* with no relief and constant trips to BOP health services for help. For several years now, he has been prescribed medication after medication intended to stop the pain and/or symptoms with no relief each time, even when the dosages are increased. The BOP has not followed the imaging recommendations of specialists, that he be given an MRI every six months to monitor the stability of his renal cysts. The last MRI showed an 9x8mm cyst in the right kidney midpole and an 8mm cyst in the left kidney midpole region in August 2022. (A60-61). Nor with multiple digital rectal exams indicating a swollen prostate, (*see, e.g.*, A12-13 (July 9, 2021), A90 (March 13, 2024)), has medical staff measured Mr. Fanelli's prostate, even when he had a cystoscopy in September 2021. (A24). Counsel has not found anything in the records to indicate Mr. Fanelli has been given the appropriate physical exams, including the:

1. American Urological Association (AUA) symptom score;

2. postvoid residual volume (PVR) to determine whether the bladder is emptying adequately;

3. frequency-volume chart or 24-hour voiding diary;

4. peak flow test.

Continuing Education on Benign Prostatic Hyperplasia.[5] And, although his "urinary symptoms are unresponsive to medical therapy," he has never been evaluated for the many different surgical options that may provide relief. *See id.* In addition to not following the evaluation protocol and treatment options recommended by the American Urological Association, the BOP has also failed to follow its own clinic guidance on pain management,[6] and the National Commission on Correctional Health's Position Statement on the Management of Chronic Pain.[7]

The consequence of such prolonged prostrate inflammation and urinary difficulties are, among other medical outcomes, bladder and kidney damage and infertility. *See* Nat'l Inst. of Diabetes and Digestive and Kidney Diseases, Prostate Enlargement (Benign Prostatic Hyperplasia) Fact Sheet.[8] But this Court need not wait

---

[5] Ng M, Leslie SW, Baradhi KM. Benign Prostatic Hyperplasia. [Updated 2024 Jan 11]. In: StatPearls [Internet]. Treasure Island (FL): StatPearls Publishing; 2024 Jan-. *Available at* https://www.ncbi.nlm.nih.gov/books/NBK558920/ (last visited June 28, 2024).

[6] BOP, *Clinical Guidance: Pain Management of Inmates* (June 2018), *available at* https://www.bop.gov/resources/pdfs/pain_mgmt_inmates_cpg.pdf.

[7] *Available at* ncchc.org/position-statements (last revised Aug. 2023).

[8] *Available at* https://www.niddk.nih.gov/health-information/urologic-diseases/prostate-problems/prostate-enlargement-benign-prostatic-hyperplasia#complications (last visited June 26, 2024).

for further testing, nor for these negative outcomes to materialize, to determine that Mr. Fanelli risks deterioration of these organs from the lack of urological care for his prostate problems. *See, e.g.*, *Verasawmi*, 2022 WL 2763518, at *10 ("[T]he record provides cause for concern that, without further intervention by the Court, omissions or delays in treatment would continue. In these atypical circumstances, where Verasawmi suffers from a complex array of serious conditions, some of which the BOP has failed to treat diligently, the Court cannot simply wait until those outcomes materialize.").

In sum, Mr. Fanelli is in constant pain, suffers from nocturia, painful urination, inability to properly void, pain at the shaft of his penis, among other debilitating symptoms. He requires prompt evaluation by a urologist to determine a treatment plan, and possibly surgery, considering the duration of his symptoms with no pharmacological relief. Whatever treatment protocol the urologist recommends for Mr. Fanelli, there is no reason to believe that the BOP will now be diligent in moving forward with it. *Cf. Bell*, Crim. No. 19-66, DE # 390, at 4 (D. Alaska) (USPO recommending Court grant sentence reduction so inmate "can obtain care without having to rely on BOP's scheduling and medical providers"). Mr. Fanelli's prostate problems are not receiving the specialized medical care they requires. Release from imprisonment to permit Mr. Fanelli to find a community treatment provider and advocate for prompt treatment is appropriate.

**2. Mr. Fanelli's need to provide care for his disabled sister that no one else can provide satisfies the Sentencing Commission's definition of extraordinary and compelling under U.S.S.G. 1B1.13(b)(3)(D).**

Under the newly adopted U.S.S.G. § 1B1.13(b)(3)(D), family circumstances can constitute an extraordinary and compelling reason for release where:

> The defendant establishes that circumstances similar to . . . (3)(C) [i.e., "the incapacitation of the defendant's parent"] exist involving any other immediate family member [, including a sibling,] . . . when the defendant would be the only available caregiver for such family member . . . .

Mr. Fanelli's 43-year-old sister, Tisha Fanelli, is tragically disabled. She has suffered from progressing multiple sclerosis for over a decade. (A98, 101).[9] She also suffers from spasticity, clonus, and debilitating urinary and constipation issues. (A98). Her entire right side is paralyzed. She spends hours a day just trying to void her urine, and does little else. (A98). She receives disability payments from the Social Security Administration and other benefits. (A99). She lives in a 300 square foot unit next to her aunt's property and is confined inside, where she has a phone, an Alexa speaker, and an emergency call button when she falls and cannot get up. (A101). She cannot move down her few front stairs, nor up the path to the road, nor around the property. (A98-99, 101-02). She must be carried to leave her home at all, which she only does for infrequent medical appointments. This transport is very traumatic as Tisha must be carried up the hill and then strapped into a wheelchair, and then the chair is secured at various points. Restrained and immobilized, Tisha expresses understandable anxiety that she has no ability to rescue herself if something happens to the vehicle during this transport. (A99-100).

---

[9] https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/diagnosis-treatment/drc-20350274.

There is no dispute that Tisha is incapacitated. *See, e.g., United States v. Doolittle*, Crim. No. 19-501 (SRC), 2020 WL 4188160 (D.N.J. July 21, 2020) (looking to BOP Program Statement 5050.50 which defines incapacitation as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse ... is completely disabled, meaning that the spouse ... cannot carry on any self-care and is totally confined to a bed or chair.").

The only question is if Michael Fanelli "would be the only available caregiver" for his sister, and the answer is yes. Tisha right now is without adequate assistance, and is suffering for it. She has one friend who is employed full-time during the week, but assists her for some hours on the weekends. (A99). Her mother, Mercedes Fanelli, is unable to care for her due to her own body's limitations: she had knee and toe surgery in 2023 that did not properly heal and required additional surgery in May 2024. Mercedes walks with a boot, cannot drive, and cannot lift Tisha. (A103). Tisha's aunt, Olga Nuciglio, who lives on the property next door, provides laundry and grocery assistance when she is at home, but not physical caretaking. Olga is nearby for emergencies and sometimes comes to help Tisha get up or move her body. (A101). Other times, Tisha must call the EMTs. Just recently, in early June, Tisha went to the bathroom in the middle of the night and fell. She had to call the EMTs to come help her. The EMTs, who have Olga's phone number, communicated to Olga their surprise that Tisha does not have 24-hour care. (A98, 101).

Tisha has funding through the Personal Preference Program of the New Jersey Department of Human Services Division of Medical Assistance and Health Services for

83 hours per month of assistance. However, every single provider Tisha has used so far has not met her basic needs. For example, one had her own disability, one did not want to do laundry, one did not want to take her to appointments, one did not speak English. (A99, 101).

Tisha is still young, her medical situation is tragic, and this leaves her, understandably, depressed. She does not want to be institutionalized. She does not want to be chained up inside a van just to be able to access physical therapy or other treatment. She yearns to return to a swimming pool to do water aerobics, low-impact movement that could improve her deteriorating physical condition. (A99). She yearns to be able to spend time in fresh air. She yearns to go to church on Sundays and see people in her community. (A100-01). Her body and mind need this activity and stimulation and nobody in the community can help her. Her brother can. Mr. Fanelli intends to live 400 feet from his sister, and will have a flexible job that will permit him to also provide physical care for Tisha every day, and to take her to church and other places outside her home.

### 3. Mr. Fanelli's rehabilitation can be considered in combination with other factors to show extraordinary and compelling reasons for relief. U.S.S.G. § 1B1.13(d)

Although Mr. Fanelli cannot rely on his commendable rehabilitation alone as a basis to justify a sentence reduction, this Court may consider his rehabilitation "in combination with other circumstances." U.S.S.G. § 1B1.13(d); *see also* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254, 28,255 (eff. Nov. 1, 2023). Mr. Fanelli is rightfully proud of his accomplishments and progress

during the 70 months of his imprisonment. He worked in a supervisory capacity at UNICOR for several years. (A106). UNICOR is the BOP's premier prison industry, with a waitlist of 25,000 inmates and an acceptance rate of 8%, with studies showing participants were 24% less likely to revert to criminal behavior and 14% more likely to be gainfully employed following release from prison.[10] Mr. Fanelli participated in hundreds of hours of programming, including a behavior modification program and introduction to Masonry. He is currently participating in RDAP, a voluntary, nine-month, 500-hundred-hour program that uses an intensive therapeutic community model focused on substance abuse, addiction, criminal thinking patterns, and coping skills. Through RDAP, Mr. Fanelli runs a weekly gambler's anonymous group and he recently won an award in appreciation of how he motivates others. Mr. Fanelli's high level of participation in RDAP is notable because, due to the nature of his criminal history, he cannot have his sentence reduced upon RDAP completion, a benefit that inspires many others to participate. *See* BOP Program Statements 5331.02, 5162.05.

Mr. Fanelli's rehabilitative progression during these past six years has been extraordinary, particularly his passion to teach and help others. This change in him is palpable to his family, and demonstrates significant progress through the 12 steps of addiction recovery. *See* https://www.aa.org/the-twelve-steps (describing service to others as the last of the 12 steps). This Court can consider Mr. Fanelli's rehabilitation

---

[10] UNICOR Program Details, *available at*
https://www.bop.gov/inmates/custody_and_care/unicor_about.jsp.

among other factors demonstrating extraordinary and compelling reasons for sentence reduction.

**C.    The Section 3553(a) factors also favor release and Mr. Fanelli is not a danger to the community**

Mr. Fanelli has demonstrated that extraordinary and compelling reasons warrant a sentence reduction, but this Court must also consider any reduction in light of the sentencing factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. Respectfully, the sentencing analysis has now shifted and what *was* "sufficient, but not greater than necessary" at the time of sentencing, is now greater than necessary to meet the goals of sentencing.

When this Court imposed punishment on Mr. Fanelli, it did not consider that the punishment would include years of debilitating pain with potential organ damage and infertility. Mr. Fanelli has not been provided "needed … medical care … in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Indeed, other courts have considered illness and discomfort as a mitigating factor towards sentence reduction. *See, e.g.*, *United States v. Williams*, Crim. No. 04-95, 2020 WL 1751545, at *1, 4 (N.D. Fla. Apr. 1, 2020) (finding Section 3553(a) factors supported a reduction where the inmate, convicted of armed bank robbery, brandishing a firearm, and possessing a firearm as a convicted felon, had served much of his sentence while seriously ill and in physical discomfort"); *United States v. McGraw*, Crim. No. 02-018, 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019) (similarly finding serving sentence while ill and in physical discomfort supported 3553 analysis); *United States v. Schmitt*, Crim. No. 12-4076, 2020 WL 96904, at *6 (N.D.

19

Iowa Jan. 8, 2020) (finding health conditions and chronic pain meant that defendant's sentence has been significantly more laborious than sentences served by other inmates); *Lindell*, 517 F.Supp.3d at 1149 (finding sentencing analysis had changed after many years with unmet health needs at the BOP); *accord United States v. Carroll*, 545 F.Supp.3d 674 (N.D. Iowa June 22, 2021).

Moreover, a 70-month sentence (what Mr. Fanelli has already served), is a significant term that deters both him and others. This is the longest sentence Mr. Fanelli has served. Research studies consistently confirm that it is the certainty, rather than the severity, of punishment that serves as a deterrent. Valerie Wright, Sentencing Project, *Deterrence in Criminal Justice: Evaluating Certainty v. Severity of Punishment* 8 (2010). *See also* Steven N. Durlauf & Daniel S. Negin, *Imprisonment and Crime: Can Both be Reduced?*, 10 Criminology & Pub. Pol'y 13, 37 (2011). Moreover, long sentences provide diminishing returns. *Id.*; *see also* U.S. Dep't of Justice, Nat'l Inst. of Justice, *Five Things About Deterrence*, May 2016[11] ("A more severe (i.e., lengthy) prison sentence for convicted individuals who are naturally aging out of crime does achieve the goal of punishment and incapacitation. But that incapacitation is a costly way to deter future crimes by aging individuals who already are less likely to commit those crimes by virtue of age."); *United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) (citing studies demonstrating the risk of recidivism is inversely related to an inmate's age").

---

[11] *Five Things About Deterrence*, *available at* https://ncjrs.gov/pdffiles1/nij/247350.pdf.

Nor does finding that Mr. Fanelli's current application warrants a reduction in sentence minimize the seriousness of his conduct. He has already served substantial time both for his criminal offenses and his violation of supervision conditions. During this term of imprisonment, Mr. Fanelli has benefitted from and excelled in the BOP's therapeutic programming, including nearly completing the 500-hour inpatient RDAP program. This program has helped him understand his own problems and empathize with his victims. (*See* A105-06).[12] In particular, Mr. Fanelli's leadership in his recovery program should help him sustain his sobriety because giving back to the recovery community "fosters a sense of purpose and fulfillment" and "creates a sense of belonging and camaraderie."[13] It also helps Mr. Fanelli create new neural pathways to move beyond his serious gambling addiction that had "physically hijack[ed his] brain" and "diminishe[d his] capacity to evaluate and control" his behaviors. *United States v. Dikiara*, 50 F. Supp. 3d 1029, 1032 (E.D. Wis. 2014) (quoting *United States v. Hendrickson*, 2014 WL 2600090, at *5 (N.D. Iowa June 11, 2014)).

Mr. Fanelli's post-sentencing conduct and rehabilitation have set him down a positive path to continue his pro-social and service-oriented goals in the community. The goals of reflecting the seriousness of the offense, affording adequate deterrence,

---

[12] Note that Mr. Fanelli cannot further access other therapeutic offerings: he has been waitlisted for anger management, criminal thinking, and emotional self-regulation courses for several years. (A106).

[13] https://libertyaddictionrecovery.com/12-principles-of-aa/ (last visited July 1, 2024).

and protecting the public will remain satisfied even considering the requested reduction in sentence.

**D.    If granted a reduction in sentence, Mr. Fanelli has an appropriate release plan in place that will help assure he complies with all conditions of supervision.**

Mr. Fanelli is laser-focused on attending to his medical needs and to his sister's care, and then continuing other community-oriented goals. He will live at his aunt's home in Deptford, New Jersey, right next to his sister. He will immediately apply for Medicaid and seek specialist care for his prostate symptoms, although once he is able to restart his power washing business, Brightshine, he will again be able to pay for his own insurance. Mr. Fanelli still has all the necessary equipment to run his business in a shed at his aunt's house. (A102). Mr. Fanelli will pursue mental health and addiction treatment at New Hope Integrated Behavioral Health Care, and participate in a weekly Gambler's Anonymous group close to home. He also intends to volunteer at GCCC, a local church in Gloucester County, and already has a relationship with its Pastor Bruce Sofia.

With this focused release plan, and the availability of other conditions that this Court might impose, Mr. Fanelli submits that that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* § 1B1.13(a)(2).

**CONCLUSION**

Mr. Fanelli has demonstrated extraordinary and compelling reasons for sentence reduction and respectfully asks this Court to reduce his sentence to permit him to return to the community, take care of his prostate issues, and care for his disabled sister.

Respectfully submitted,

s/ *Alison Brill*

Alison Brill
Assistant Federal Public Defender

800 Cooper Street, Suite 350
Camden, NJ 08102
Phone: (609) 489-7457
Email: alison_brill@fd.org

Counsel for Michael Fanelli

**CERTIFICATE OF SERVICE**

I, Alison Brill, Assistant Federal Public Defender, counsel for defendant

Michael Fanelli, hereby certify that a copy of the Motion for Reduction in

Sentence was served by ECF upon Assistant United States Attorney Jeffrey

Bender.

s/ *Alison Brill*

Alison Brill
Assistant Federal Public Defender

DATED: July 1, 2024