[Docket No. 76.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL FANELLI,<br><br>Defendant. | Crim. No. 16-110 (RMB)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

Defendant Michael Fanelli asks this Court for compassionate release. 18 U.S.C. § 3582(c)(1)(A). He argues that he meets the high bar of "extraordinary and compelling reasons" to justify compassionate release because: (1) he has serious medical conditions requiring long-term or specialized care that, if without proper treatment, place him "at risk of serious deterioration in health or death[,]" U.S.S.G. § 1B1.13(b)(1)(C); (2) he needs to care for his disabled sister and he is the only available caregiver, *id.* § 1B1.13(b)(3)(D); and (3) his rehabilitative efforts while incarcerated support a sentence reduction, *id.* § 1B1.13(d).

This Court disagrees. Fanelli has not presented extraordinary and compelling reasons to justify compassionate release. That aside, many of 18 U.S.C. § 3553(a) factors that this Court must consider weigh heavily against release. And Fanelli's criminal history and willingness to reoffend while on supervised release show he still presents a danger to the community and others. So the Court **DENIES** Fanelli's motion for compassionate release.

## I. BACKGROUND

Fanelli is a serial bank robber. In 2016, he pled guilty to robbing six banks. [Docket Nos. 22-23.] While Fanelli faced seventy to eighty-seven months imprisonment under the

Sentencing Guidelines for those robberies, this Court gave him a "huge break" by downwardly departing and sentencing him to thirty-seven months imprisonment with three-years of supervised release. [Docket No. 29.] *See also United States v. Fanelli*, 824 F. App'x 130, 131 (3d Cir. 2020).

Despite this Court's leniency, Fanelli robbed a bank in Pennsylvania less than three-months into his supervised release. *Fanelli*, 824 F. App'x at 131. He pled guilty to that offense, and a District Court in the Eastern District of Pennsylvania sentenced him to seventy-two months imprisonment with three-years of supervised release. *Id.* Fanelli's bank robbery violated the terms of the supervised release that this Court imposed. *Id.* Fanelli pled guilty to three violations, and this Court sentenced him, in total, to forty-eight months imprisonment for the supervised-release violations. *Id.* The Court ordered that sentence to run consecutive to his seventy-two months sentence for his Pennsylvania bank robbery conviction. [Docket No. 45.] Fanelli appealed his sentence on the supervised-release violations and the Third Circuit affirmed. *Fanelli*, 824 F. App'x at 132.

From there, Fanelli has moved many times for compassionate release both in this Court and the Eastern District of Pennsylvania. [Docket Nos. 56, 63-66; *USA v. Fanelli*, 18-cr-542 (E.D.P.A.), Docket Nos. 41, 45, 47, 56 (EDPA Docket).] No motion was successful. [Docket Nos. 71-72; EDPA Docket Nos. 44, 46, 53-54, 59.] Fanelli again seeks compassionate release in this Court, arguing, among other things, he has severe urinary and prostate problems that have caused him severe pain, and he needs to be released because he is the sole caregiver to his sister who is suffering from multiple sclerosis. [Def. Mem. of Law in Supp. of Mot. for Compassionate Release 5-17 (Def. Br.) (Docket No. 76).]

When Fanelli filed this motion, he had a target release date in March 2027. [*Id.* at 1.] The Bureau of Prisons (BOP) has since moved up Fanelli's release date by a year, so his release date is in March 2026. [Letter from Allison Brill, Esq. dated June 2, 2025 at 1 (Docket No. 91).] According to Fanelli, as of June 2, 2025, he has completed 89 percent of his sentence. [*Id.* at 2.] With a release date in March 2026, Fanelli asserts that he has a "halfway house/home confinement date" in September 2025. [*Id.*] But Fanelli has chosen a later halfway house/home confinement date in November 2025 so he can complete a residential drug treatment program. [*Id.*] He asks this Court to convert the remaining portion of his sentence into specialized supervised release that he would serve along with his three-year term of supervised release imposed for his Pennsylvania bank robbery conviction. [*Id.* at 3.] Fanelli contends such a sentence reduction is the only way: (1) he can obtain the immediate medical treatment he claims he needs; and (2) to start serving as caregiver for his sister. [*Id.* at 3-4.]

### A. Fanelli's Health Matters

Fanelli claims that he suffers from several prostate ailments including benign prostate hyperplasia, presumptive prostatitis, and male pelvic pain syndrome. [Def. Br. at 2; App'x at 8, 13, 90.] Fanelli has been diagnosed with an 8-millimeter hemhorragic cyst in his kidney, which has remained stable in size. [*See* App'x at 43–44, 45, 55, 59–60, 65, 75.] Fanelli's medical records reveal that after an MRI revealed the cyst in February 2022, another MRI was conducted in August 2022. [App'x at 43–44, 59–60.] Fanelli had another MRI scheduled for February 2023 in accordance with the recommended six-month follow-up schedule, but the order was changed to an ultrasound and eventually postponed due to Fanelli's transfer from FCI Allenwood to FCI Fairton. [App'x at 62, 73.] Medical personnel at FCI Fairton

ordered a follow-up MRI for August 2023, but this was later revised to a CT scan, which took place on August 14, 2023. [App'x at 75, 81.]

Fanelli has reported symptoms such as burning pain, pain while urinating, and pain while sitting. [Def. Br. at 2; App'x at 1, 20, 22, 55, 65, 67, 76, 82, 83, 88.] He claims this pain has affected his daily quality of life. [*Id.*] He has also expressed concerns about his future medical ability to father children. [*See, e.g.*, App'x at 90.] In response to Fanelli's concerns, medical personnel offered him medications including doxazosin (which was increased in dosage in response to his continued symptoms in March 2024 [App'x at 90], amitriptyline (which Fanelli discontinued on his own volition [App'x at 71]), tamusulosin (commonly known as Flomax) (which he discontinued by May 2023 due to his belief he was in remission from his prostate ailment [App'x at 74]), ciprofloxacin, sulfamethoxazole, and various other pain medications. [*See* App'x at 36–38, 54, 68, 69, 71, 88, 89, 92.] Fanelli's last urology-specific medical examination was in October 2022, in which the medical provider recommended in their plan that there was "no reason from a urologic standpoint not to transfer." [App'x at 67.] Fanelli continued to have several medical clinical encounters at FCI Fairton. [*See* App'x at 73, 74, 75, 76, 79–80, 82, 83, 88, 89, 90, 92.] In March 2024, Fanelli was recommended for a urology consult at FCI Fairton to be scheduled for June 2024 to address his ongoing symptoms. [App'x at 90.] This consult was eventually denied for the stated reason that it was not medically indicated. [Gov't March 11, 2025 Response to Order, Ex. B, at 1, 31 (Gov't Resp.) (Docket No. 89).]

On August 1, 2024, Fanelli had an evaluation for "pulsing" testicular pain. [*Id.*, Ex. A, at 24.] Fanelli had a sick call encounter with the providers at FCI Fairton on August 9, 2024, complaining of "general weakness, diarrhea, and chest discomfort" due to possible food

poisoning.  [*Id.* at 16–17.]  A few weeks later, he had another sick call where he reported leg muscle spasm and anxiety about his family's medical problems.  [*Id.* at 13.]

On December 3, 2024, Fanelli filed a Request for an Administrative Remedy at FCI Fairton in which he requested to see a urologist, claiming that he had been repeatedly denied care after submitting sick call requests, and had not been given a cancer biopsy in spite of a chronic prostatitis diagnosis.  [*Id.*, Ex. B, at 1, 27.]  The warden at FCI Fairton denied this request on January 8, 2025.  [*Id.* at 2.]  The denial states that at Fanelli's last chronic care clinic evaluation before the Request, which took place on September 3, 2024, the medical provider found that "[Fanelli did] not have a diagnosis of chronic prostatitis," even after all prior medical records had been reviewed.  [*Id.* at 1, 5–8.]  The denial then states that at a subsequent sick call request on December 18, 2024, the provider "documented that [Fanelli] had epididymitis and prescribed the antibiotic[] Bactrim for ten days."  [*Id.*; *see also id.*, Ex. A, at 6.]  The provider also informed Fanelli that he needed to "follow up through sick call as needed" and that "the approval of a new request for a urology consultation would need to be discussed with the Clinical Director."  [*Id.*, Ex. A, at 6; *see also id.* at Ex. B at 1–2, 10.]  Urinalysis performed on a specimen collected on September 26, 2024 had returned no abnormal results, and the only abnormal results from other labs collected on September 26, 2024 were a high Bilirubin level and MPV hematology reading, and low white blood cell count and MCV hematology readings.  [*Id.,* Ex. A, at 39, 42.]

Fanelli has continued to attend other medical appointments at FCI Fairton.  On February 26, 2025, he saw a provider for "testicular pain."  [*Id.*, Ex. A, at 1.]  That provider found no suspicious pathology, testicular abnormalities, or "apparent distress" in Fanelli's physical movements and testicular manipulation exam.  [*Id.* at 3.]

5

### B. Fanelli's Sister's Medical Needs

Fanelli also claims that he must care for his sister, Tisha Fanelli, who suffers from multiple sclerosis. [Def. Br. at 3.] To support this claim, Fanelli offers Declarations from Tisha, his mother, Mercedes Fanelli, and his aunt, Olga Nuciglio. Tisha suffers from spasticity, involuntary muscle contractions, numbness, tingling, and bladder incontinence. [Decl. of Tisha Fanelli ¶¶ 2-3 (Tisha Decl.).] She "is barely able to use her walker anymore and sometimes has to crawl," and "[w]hen she is standing up, Tisha can't even bend over without falling, and then she cannot get up." [Updated Decl. of Mercedes Fanelli ¶¶ 8-9 (Mercedes Decl.).] "Her friend/sometimes caretaker will have to physically carry her out of her home to be transported." [*Id.* at ¶ 7.] Tisha weighs around 100–105 pounds. [*Id.* at ¶ 5; *see also* Decl. of Olga Nuciglio ¶ 5 (Nuciglio Decl.)] She suffers from frequent falls, and requires assistance from others to get up from these falls. [Tisha Decl. ¶ 6.] Tisha also "cannot leave [her home] without help" because the entrance has two steps. [*Id.* at ¶ 7.]

Tisha's health insurance provides twenty-one prepared meals per month and the services of a home health aide for twenty-eight hours per week. But Tisha claims these services are a "total failure" because in the past, "the aides did not want to assist [her] with the tasks [she] could not do [herself], came with their own disabilities, or could not communicate with [her]. [She has] not found an aide that is able to or that [she] trust[s] to help [her] physically." [*Id.* at 99, ¶ 8.] She "need[s] more help than the aides can provide," because they are only on duty from 9 AM to 2 PM, Monday through Friday. [*Id.* at ¶ 9.] She no longer attends therapies due to the difficulties of transport. [*Id.* at ¶ 10.]

Tisha also receives help from an eighty-year-old female neighbor and a younger male neighbor, and she lives next to her aunt's property in a small home. [Mercedes Decl. ¶¶ 3,

6

10.] The younger male neighbor helps physically, but "he is not always home" and "can't get Tisha up sometimes" "because of the way Tisha's body freezes up." [*Id.* at ¶ 10.] "Tisha often calls an ambulance to come help her," but she now "declines" to go to the hospital "because there is nothing the hospital can do." [*Id.* at ¶ 13.] Tisha "needs 24-hour care which she does not have," and although she has paid caretakers, they "do not last and do not come for enough hours to meet her needs." [*Id.* at ¶ 16.]

Mercedes cannot assist Tisha, as she has medical problems that prevent her from lifting more than thirty pounds. [*Id.* at ¶¶ 18–25.] Tisha's aunt, Olga Nunciglio, who lives in the adjacent property, is undergoing treatment for breast cancer and cannot lift more than fifteen pounds. [*Id.* at ¶¶ 26–32.] Tisha previously lived in Nunciglio's home, but obtained the adjacent cottage with a Section 8 waiver in 2018 because "[s]he wanted her independence." [Nuciglio Decl. ¶ 2.] According to Nunciglio, Tisha does not wish to go into assisted living because she would not be able to bring her dog. [*Id.* at ¶ 6.] HUD and the local council have also come to the property to evaluate it for adding a ramp for Tisha. [*Id.* at ¶ 7.]

### C. Fanelli's Conduct as a Prisoner

Fanelli has participated in several prison education courses on topics such as financial literacy, investing, and masonry. [App'x at 105–06.] He has also taken anger management courses and other mental therapies, and participates in the prison's Residential Drug Abuse Program and Gamblers Anonymous. [App'x at 106; Def. Br. at 4.] He has also worked full-time for "over two years" as "head orderly providing painting and industrial cleaning services" for UNICOR Industries. [Def. Br. at 3–4.]

## II. THE FIRST STEP ACT AND COMPASSIONATE RELEASE

"The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'" *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C § 3582(c)(1)(A)(i)). To obtain compassionate release under the First Step Act, an incarcerated defendant must show that: (1) he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier"; (2) extraordinary and compelling reasons warrant relief; (3) the factors set forth in 18 U.S.C. § 3553(a) support release; and (4) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).

The U.S. Sentencing Commission's Policy Statement on Compassionate Release under § 3582(c)(1)(A), U.S.S.G. § 1B1.13 (effective Nov. 1, 2023), provides that "the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," the court finds that: (i) "[e]xtraordinary and compelling reasons warrant the reduction," (ii) "[t]he defendant is not a danger to the safety of any other person or to the community," and (iii) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13(a).

The Policy Statement expanded on the categories of "extraordinary and compelling reasons" to justify compassionate release. *See generally United States v. Castillo*, 2024 WL 453608, at *3 (E.D. Pa. Feb. 6, 2024). Relevant here, the Policy Statement recognizes a defendant's "medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health

or death" as an "extraordinary and compelling reason" to justify compassionate release. U.S.S.G. § 1B1.13(b)(1)(C). Likewise, the Policy Statement recognizes that a defendant's family member's illness or other incapacitation where "the defendant would be the only available caregiver for such family member" is "an extraordinary and compelling reason" for compassionate release. *Id.* § 1B1.13(b)(3)(D). The Policy Statement also recognizes that while a defendant's rehabilitation, alone, does not qualify as a "extraordinary and compelling reason" to justify compassionate release, courts may consider a defendant's rehabilitative efforts "in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* § 1B1.13(d). A defendant shoulders the burden to show "compelling and extraordinary reasons exist to justify compassionate release." *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020) (citation and internal quotation marks omitted).

Here, all agree that Fanelli has exhausted administrative remedies. [Def. Br. at 4, App'x at 93–97; Gov't Mem. of Law in Opp'n to Def. Mot. for Compassionate Release 4 n.1 (Gov't Opp'n Br.) (Docket No. 81).] Thus, his motion is properly before this Court. That said, Fanelli has presented no extraordinary or compelling reasons to justify compassionate release. And the 18 U.S.C. § 3553(a)'s factors do not support release.

### A. Extraordinary and Compelling Reasons

#### i. Fanelli's Medical Conditions

The Policy Statement provides that extraordinary and compelling reasons exist when "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care *that is not being provided* and without which the defendant is at risk of serious

deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C) (emphasis added).[1] To prevail on this ground, Fanelli must show that the BOP has not provided him with "adequate care." *United States v. Bailey*, 2025 WL 1114185, at *7 (D.D.C. Apr. 15, 2025). But "adequate care" does not mean "optimal medical care or the care of an inmate's choosing." *Id.* (quoting *United States v. Edwards*, 2022 WL 2866703, at *4 (D.D.C. July 21, 2022)).

Courts that have granted compassionate release based on a defendant's medical conditions have done so where the BOP failed "to provide necessary treatment" or there have been "undue delays in treating serious conditions[.]" *United States v. Verasawmi*, 2022 WL 2763518, at *7 (D.N.J. July 15, 2022) (collecting cases). So, for example, a court granted compassionate release where the BOP's delays in evaluating an inmate with lumps on her breast allowed her breast cancer to metastasize and spread. *United States v. Beck*, 425 F. Supp. 3d 573, 580-81, 588 (M.D.N.C. 2019). That said, courts have denied compassionate release where the record showed BOP addressed a defendant's medical condition and provided treatment. *See, e.g.*, *United States v. Revis*, 2025 WL 1692175, at *1 (4th Cir. June 17, 2025) (affirming denial of compassionate release, reasoning that "[w]hile [defendant] does suffer from multiple serious medical conditions," the record showed that defendant "has received extensive, specialized care in BOP's custody[,]" and as such, defendant's medical conditions did not constitute "an extraordinary and compelling reason for release"); *United States v. Martinez*, 2022 WL 1089671, at *3 (W.D.N.Y. Apr. 12, 2022) (denying compassionate release because defendant failed to show that BOP was providing inadequate treatment where the

---

[1] Fanelli does not claim that he has a terminal illness, U.S.S.G. § 1B1.13(b)(1), or that he is unable to perform basic care functions in a correctional facility, *id.* § 1B1.13(b)(1)(B)(iii), or that he is at risk due to an infectious disease outbreak, *id.* § 1B1.13(b)(1)(D).

10

record revealed that BOP "has consistently provided treatment, sent [defendant] to specialists, scheduled him for medical procedures, and worked to address his complaints").

Against that backdrop, Fanelli has not shown the BOP has provided inadequate care for his medical conditions to justify compassionate release. To the contrary, BOP medical providers in two different correctional facilities have worked diligently to address and treat Fanelli's concerns and symptoms in multiple appointments. He has received two MRIs and a CT scan of his cyst, which was found to not be growing and thus not in need of urgent care. [App'x at 43–44, 59–60, 62, 73, 75, 81.] He has received several courses of medication to treat his urinary and pelvic pain, and his providers even increased his dosage where he reported no relief in symptoms. [*Id.* at 36–38, 54, 68, 69, 71, 88, 89, 90, 92.] Even where his provider had doubts about the factuality of his condition, they continued to provide treatment and only declined to order treatment they found was not clinically indicated. [*Id.* at 90, 92.]

The medical providers at FCI Allenwood had concluded that Fanelli's medical conditions did not warrant delaying or canceling a transfer to FCI Fairton. [App'x at 67.] Fanelli's medical records reveal his self-reporting of pain, his desire for a surgical procedure, and his concern about his ability to have children in the future. [*See* App'x at 67, 73, 74, 75, 76, 79–80, 82, 83, 88, 89, 90, 92.] But the BOP has responded to Fanelli's complaints by providing medications and performing multiple rounds of diagnostic tests and lab work, none of which showed a need for urgent medical treatment of his alleged conditions. [*See generally id.*; Gov't Resp., Exs. A-B.]

The urology follow-up appointment that was originally scheduled at FCI Allenwood was delayed solely due to Fanelli's facility transfer, and he has since had several medical visits at FCI Fairton, during which a urology consult was scheduled in March 2024 but then found

medically unnecessary by the facility's clinical director. [App'x at 67, 90, 92.] Fanelli does not provide medical record evidence that his condition has worsened, only that it has not improved on the BOP's medication regimen. [*See, e.g.*, *id.* at 90.] Indeed, a medical provider at FCI Fairton indicated that some of Fanelli's symptoms were self-induced due to obsession over the matter. [*Id.*] The clinical director at FCI Fairton found no pathology findings in a March 2024 visit, and found that Fanelli's requested surgical procedure was "not clinically indicated." [*Id.* at 92.] Similarly, providers have, as recently as February 2025, found no abnormal testicular features or "apparent distress" in Fanelli's condition, and he has only had a few high or low lab results that seem to not have been cause for concern. [Gov't Resp., Ex. A, at 1, 3, 39, 42.]

Fanelli's medical records reveal that while he has serious medical conditions, the BOP is treating those conditions with various medications and providing diagnostic testing to ensure his conditions do not become worse. The record reveals that Fanelli is not receiving inadequate medical care, and thus, his medical conditions do not constitute "an extraordinary and compelling reason for release." *Revis*, 2025 WL 1692175, at *1. While Fanelli's medical conditions may cause him pain, "[d]aily pain and suffering, without a particular showing of extraordinary circumstance, does not warrant compassionate release relief." *United States v. Dawara*, 2024 WL 5082321, at *3 (E.D. Pa. Dec. 11, 2024). Fanelli has "not met the exceedingly high bar of showing extraordinary and compelling reasons for release" based on his medical conditions. *Bailey*, 2025 WL 1114185, at *11 (citation and internal quotation marks omitted).

### ii. Fanelli's Family Circumstances

The Policy Statement recognizes that a defendant's immediate family member's incapacitation may constitute an extraordinary and compelling reason for compassionate release where the defendant is the "*only* available caregiver" for the incapacitated family member. U.S.S.G. § 1B.13(b)(3)(D) (emphasis added). An "immediate family member" includes a sibling of the defendant. *Id.* A defendant must present "strong evidence" that he or she "is the *sole* individual capable of caring for the [family member]." *United States v. Striganivicz*, 2023 WL 4868100, at *1 (E.D. Pa. July 31, 2023) (emphasis in original).

To start, Fanelli offers no medical evidence to establish that Tisha is incapacitated. Courts look to BOP guidelines in defining incapacitation. *United States v. Doolittle*, 2020 WL 4188160, at *3 (D.N.J. July 21, 2020). Those guidelines define incapacitation as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [family member] . . . is completely disabled, meaning that the [member] . . . cannot carry on any self-care and is totally confined to a bed or chair." *Id.* (omissions in original, citation and internal quotation marks omitted). The incapacitation inquiry requires, among other things, "a statement and verifiable medical documentation regarding the [family member's] incapacitation[.]" *Id.*

Without medical documentation establishing a family member's incapacitation, courts have refused compassionate release. *See, e.g.*, *United States v. Ragan*, 2023 WL 4487772, at *4 (D.N.J. July 12, 2023) ("Where, as here, a defendant 'present[s] no medical documentation or other competent evidence demonstrating that his [family members are] incapacitated,' courts will deny a request for compassionate release." (alterations in original) (quoting *Doolittle*, 2020 WL 4188160, at *3)); *see also United States v. Duprey*, 2024 WL 3873938, at *2

13

(D.N.J. Aug. 19, 2024) (holding defendant failed to show that his mother is incapacitated where defendant offered no medical evidence, but only submitted letters from defendant's mother and siblings describing mother's medical condition); *accord United States v. Stanley*, 2022 WL 2052603, at *2 (E.D. Cal. June 7, 2022) (denying motion for compassionate release where defendant did not provide medical records confirming familial incapacitation). While the Declarations that Fanelli submits in support of his motion show how Tisha and her family members are struggling given Tisha's medical conditions, this Court cannot—without verifiable medical documentation—determine whether Tisha is able to care for herself anymore or is totally confined to a bed or chair. *Doolittle*, 2020 WL 4188160, at *3. Indeed, the record suggests Tisha opted to live by herself because she wanted more independence and she, at times, can move around her apartment. [Nuciglio Decl. ¶ 2; Tisha Decl. ¶¶ 5-6.]

Setting aside the lack of medical documentation, Fanelli presents no evidence that he is the sole available caregiver. The record shows the opposite. Tisha has available caregivers: her neighbors, especially her younger male neighbor, and the home health aides provided by her health insurance who work twenty-eight hours per week to assist in cooking, cleaning, and other household tasks. [Tisha Decl. ¶¶ 8–9; Mercedes Decl. ¶ 10.] While Tisha may have issues with the care provided by the home health aides, the fact that those aides, along with a neighbor, help Tisha shows Fanelli is not the sole available caregiver. *See United States v. Taveras*, 731 F. Supp. 3d 94, 100 (D. Mass. 2024) (denying compassionate release, finding defendant not the "only available caregiver" for his mother where defendant's mother had "a substantial network of care provided by her health insurance" and "neighbors that help [mother] when needed").

14

Finally, the Court questions whether Fanelli would be a suitable caregiver for his sister given his own medical problems. Indeed, Fanelli claims he is in "constant pain" and suffering from "debilitating symptoms." [Def. Br. at 14.] Fanelli's medical problems may preclude him from serving as a caregiver for Tisha. And while Fanelli claims that once released, he will "find a community treatment provider and advocate for proper treatment[,]" *see id.*, Fanelli has not identified any medical treatment that would immediately alleviate his pain so he could start caring for Tisha, or how he could care for Tisha while under treatment. *Cf. Doolittle*, 2020 WL 4188160, at *3 (noting the BOP guidelines on incapacitation require "adequate information and documentation . . . regarding *the inmate's release plan*" (emphasis added)). So the Court finds Fanelli's family circumstances are not extraordinary and compelling reasons to justify compassionate release.

### iii. Fanelli's Rehabilitation Efforts in Prison

The Policy Statement recognizes that a defendant's rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B.13(d). But rehabilitation alone is not an extraordinary and compelling reason to justify compassionate release. 28 U.S.C. § 994(t); *see also United States v. Bledsoe*, 2022 WL 3536493, at *2 (3d Cir. Aug. 18, 2022) ("[C]laimed efforts in furtherance of rehabilitation, while commendable, are expected, . . . they are, standing alone, neither extraordinary nor compelling for purposes of the compassionate-release standard[.]" (citations and internal quotation marks omitted)).

Fanelli has performed many rehabilitative activities during his imprisonment, ranging from taking educational courses to participating in work programs to teaching. [App'x at 105-06.] While Fanelli's efforts to rehabilitate himself are commendable, those efforts alone

15

cannot demonstrate extraordinary and compelling reasons to warrant compassionate release. *Bledsoe*, 2022 WL 3536493, at *2. Because the record lacks "other circumstances that could constitute extraordinary or compelling reasons for a reduction," Fanelli's efforts toward rehabilitation do not support release. *United States v. Berrios*, 2025 WL 654160, at *4 (D.N.J. Feb. 28, 2025) (quoting *United States v. Gantt*, 2024 WL 3385493, at *3 (D.N.J. July 12, 2024)).

### B.  18 U.S.C. § 3553(a) Factors

Setting aside Fanelli's failure to present extraordinary and compelling reasons to justify compassionate release, the 18 U.S.C. § 3553(a) factors that this Court must consider do not support early release. Before granting compassionate release, courts must consider the § 3553(a) factors "to the extent that they are applicable." § 3582(c)(1)(A). Those factors are: "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1), and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(A)-(C).

Starting with "the nature and circumstances of the offense[,]" *id.* § 3553(a)(1), Fanelli violated the terms of his supervised release by committing an armed bank robbery in Pennsylvania. Fanelli committed that offense less than three months into his supervised release that this Court imposed as part of his sentence for six other bank robbery convictions. Fanelli's violations of his supervised release were extreme, show his total disregard for the rule of law, and the safety of others. *See United States v. Johnson*, 2020 WL 7488644, at *4 (E.D. Pa. Dec. 21, 2020) (denying compassionate release, finding § 3553(a) factors did not support release reasoning defendant's sentence for violating supervised release "fully

warrant[ed]" where defendant violated his supervised release by engaging in the same criminal activity as his original convictions). Indeed, as the District Court for the Eastern District of Pennsylvania found when denying Fanelli compassionate release, "the escalatory nature of [Fanelli's] criminal record indicates that his early release would unnecessarily subject the public to the risk that he will commit more crimes." *United States v. Fanelli*, 2022 WL 2440793, at *8 (E.D. Pa. July 5, 2022).

Turning to Fanelli's "history and characteristics," *id.* § 3553(a)(1), Fanelli has a long criminal history. He's had run-ins with the law since he was sixteen years old. [PSR ¶¶ 97-114.] Even after this Court gave Fanelli a "huge break" at his sentencing for his underlying robbery convictions, Fanelli again robbed another bank. *Fanelli*, 824 F. App'x at 131. Fanelli has shown—time-and-time again—his disrespect for the rule of law and willingness to reoffend even after a court's leniency. *See United States v. Davenport*, 850 F. App'x 138, 140 (3d Cir. 2021) (summarily affirming denial of compassionate release, finding it "reasonable for the District Court to conclude that [defendant's] serious offenses, criminal history, and previous sentencing reduction strongly favored denying his request for compassionate release").

While Fanelli has less than a year remaining on his sentence, the Court still finds compassionate release inappropriate given the § 3553(a) factors. *See United States v. Page*, 859 F. App'x 635, 636 (3d Cir. 2021) (affirming denial of compassionate release where defendant had one-year "left to serve on his ten-year sentence"); *Johnson*, 2020 WL 7488644, at *4 (denying compassionate release where defendant had seven months remaining on his twenty-four month sentence); *United States v. Mayfield*, 2020 WL 3604090, at *3 (D.N.J. July 2, 2020) (denying compassionate release even where defendant was "nearing his release

17

date"). And the Court is not satisfied that converting the remaining portion of Fanelli's custodial sentence into supervised release reflects the seriousness of his offenses or will protect the public from harm. Fanelli's willingness to violate the terms of supervised release so quickly after being released from custody "only serve[s] to fortify the Court's belief that [Fanelli] would not abide by any release terms or conditions." *United States v. Jones*, 2025 WL 744609, at *2 n.2 (N.D. Ohio Mar. 7, 2025).

In short, granting Fanelli compassionate release would not reflect the seriousness of his offenses, promote respect for the law, or provide just punishment. 18 U.S.C. § 3553(a)(2)(A).

### C. The Policy Statement: Danger to Others

While the § 3553(a) factors weigh heavily against compassionate release, so too does the Policy Statement. The Policy Statement explains that not only does a defendant have to present extraordinary and compelling reasons for compassionate release and the § 3553(a) factors must support release, the defendant must also not be "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2).

Fanelli's proclivity to rob banks—especially after robbing one shortly after his release from prison—shows his danger to the community. *United States v. Burney*, 2021 WL 62302, at *3 (D.N.J. Jan. 6, 2021) (collecting cases and explaining that "[c]ourts in this circuit have consistently considered the seriousness of multiple bank robberies in denying compassionate release in order to protect the public from further crimes of the defendant"); *see also United States v. Berry*, 2020 WL 4035457, at *3 (D.N.J. July 17, 2020).

What's more, one of Fanelli's victims for his Pennsylvania bank robbery strongly opposes Fanelli's early release. [Gov't Opp'n Br., Ex. A at 19-20.] The victim's mother writes how Fanelli traumatized her daughter when he robbed the bank in Pennsylvania. [*Id.*] Her daughter "feel[s] unsafe anywhere she goes for fear" of having a gun pointed at her face. [*Id.*]

And Fanelli's medical conditions do not make him a less danger to the public. *See United States v. Urso*, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019) (denying compassionate release even where defendant was of advanced age and suffered from chronic (but not terminal) illnesses because defendant was still a danger to the community given the violent nature of his criminal activity).

Given the violent nature of Fanelli's offenses, coupled with his criminal history and recidivism, the Court finds he still poses a danger to the community, and so, the Court denies compassionate release.

### III. CONCLUSION

For the above reasons, the Court **DENIES** Fanelli's Motion for Compassionate Release (Docket No. 76). An accompanying Order of today's date shall issue.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: August 8, 2025